Spear, C. J.
The land in controversy is that on which was located a basin connected with the Miami and Erie canal, which basin was constructed by one George W. Dickson, who is the common source, of title. The canal was completed through the vil] age of Sidney in the year 1840. In the year 1844, Dickson, who owned lands in the village, platted them as an addition, and marked off a tract called “Basin,” and the basin was soon after constructed by him. It adjoined the canal, and nine lots of the addition abutted upon the basin. When completed, the bank which divided it from the canal, was taken away by Dickson, and the water from the' canal flowed into the basin and supplied it from that time so long as used. It was constructed wholly at Dickson’s expense, and for the purpose of forming a stopping place for boats navigating the canal, for loading and unloading and for turning, the ultimate purpose being to add value to *280 Dickson's adjacent lots. Soon after the basin was completed Dickson sold the lots. The basin was so used for thirty-five to forty years, and until the canal lost much of its importance as a water-way, and fell into gradual disuse, since which time the purchasers of the basin lands from Dickson, in- • eluding the plaintiff in error have been in occupancy of it. It is now nearly filled up.
About the year 1853, one W. J. Jackson, employed in the engineering service on the canal, and connected with the. public works, and in charge of the portion of the canal with which the basin connected, caused the basin to be cleaned out. He, also, when in the employ of the lessees from the State, caused it to be cleaned out. Some years after, this engineer, seeing some persons in the act of filling a portion of the basin, or putting up a wall for the purpose of building a house, stopped them, claiming the property as belonging to the State. He considered it as part of the canal, and so treated it. These persons were strangers to Jackson, and their identity is not disclosed.
The contention on the part of the State is that the turning in of the water which belonged to the State, and the State’s use of the basin for many years in connection with the canal, constituted an appropriation, and that therefore the State has title to the land in fee simple. The ultimate question, therefore, is: Was there an appropriation? The State’s claim is believed by its counsel to be supported by the cases of Malone v. Toledo, 28 Ohio St., 643, and 34 Ohio St., 541; The State ex rel v. Railway Co., 53 Ohio St., 189, and State v. Snook, same volume, 521.
It is not doubted that if this basin was actually appropriated a fee simple title vests in the State. *281 We are not, therefore, aided in the inquiry as to whether the acts shown amounted to an appropriation by the case of Malone v. Toledo, because the fact of appropriation was not in that case contested; nor by State v. Snook, because the case deals with lands of which, admittedly, the State acquired possession under the act of February 4, 1825, 23 Ohio Laws, 57, and the act of February 7, 1826, and used in the construction of the canal, which implies an appropriation. Are we aided by the case of State ex rel v. Railway Co. The third paragraph of the syllabus holds that by force of section 8 of the act of February 24, 1825, “whenever the state actually occupied a parcel of land for canal purposes, a fee simple title thereto at once and by virtue, alone, of such occupancy, vested in the state.” It may be remarked in passing that, inasmuch as there was no real contention as to the fact of appropriation by the State of the land in controversy and its long exclusive use as part of the canal system, this proposition of the syllabus settled no contested point in the case, and may properly be treated as simply a predicate for the proposition which follows. However, the term “actually occupied” imports, ex vi termini, exclusive occupancy; so that it would be necessary to show that a claimed occupancy by the State was an exclusive occupancy in order to bring the case within the letter of the proposition. This, we think, the facts fail to establish in the case at bar. An occasional use, in common with other navigators on the canal, of a private basin, by boats belonging to the State, an occasional dredging out by an engineer in the employ of the State, and a claim entertained by him that the basin was the property of the State, not communicated to the actual owner of the land upon *282 which the basin was constructed, or his successors in title, cannot, standing alone, be regarded as showing exclusive occupancy by the State. We think, therefore, that the ease at bar is not controlled by either of the cases cited.
Much importance seems to be attached in argument to the fact that the waters of the canal filled the basin. Manifestly this simple fact is not sufficient to authorize the conclusion that exclusive occupancy is thereby shown or a possession by the State thereby accomplished, else permission to take water which may flood adjoining lands, for the purpose of watering- stock, or for power — not an uncommon thing-in the history of canals — would at once vest title in the State to the land over which the water thus flows. Clearly the act must take its character from the purpose with which it is done, and when this act of flooding is considered in connection with the known purpose of the projector of the enterprise in .the construction of the basin, and the uses to which it was to be put — uses which contemplated at all times regulation by the owner —uses beneficial, it is true, to persons who were at the same time using the State’s canal, and in some measure to the State itself, but capable of enjoyment apart from and in addition to such uses, and entirely consistent with continued private ownership by the projector, it is plain that no exclusive occupancy by the State was intended by the act of flooding the basin. In no view of the case can it be consistently claimed that the construction and maintenance of the basin implied a purpose to devote the land itself to an exclusive public use, or to any joint use, after the object of its construction should be accomplished. Private ownership of places and structures for conven *283 ience in mooring and lading boats was common in the use of canals. It is distinctly recognized by the act of March 23, 1840, 38 Ohio Laws, 87, section 32. And no reason is apparent why private ownership in lands used for a basin' could not continue as well as in places for mooring, and for lading and unlading boats.
Nor do the facts warrant the conclusion that the basin was appropriated by the State. The statute under which lands necessary for this canal were acquired is the act of February 4, 1825, before referred to, which is an act to provide for the internal improvement of the State by navigable canals. Section 8 of the act makes it lawful for the canal commissioners, by themselves and any superintendent, agent or engineer, to take possession of and use any lands, waters, etc., necessary for the prosecution of the improvements intended by the act, and .to make all such canals, feeders, etc., as they may think proper for making said improvements, and where such lands, etc., taken and appropriated for any of the purposes aforesaid, have not been given or granted to the State, then the commissioners, on application of the owners, shall proceed to have an appraisal by five discreet, disinterested persons, and, if damages are found to exceed benefits, shall pay the damages assessed, and the fee-simple shall then vest in the State. It was not the purpose of the act, nor is it the policy of the State, to take land of the citizen fop public use without affording the owner an opportunity to make application for an appraisal, and upon appraisal being made as prescribed by statute, to pay damages if any are assessed. It is clear, also, that the act contemplates such assertion of exclusive control as would put the owner *284 on notice that the property had been taken by the State for its own, and incorporated as part of its canal system. As already indicated, it is expressly shown by the record in this case that the basin was laid out and constructed by Dickson as a private enterprise, and it is in no way shown that he subsequently intended to donate it to the State, nor is there any pretense that there was any demand by the State, or its proper officers, of the owner, of possession for the purpose of incorporating the basin into the canal system, nor any niformation given him that the State proposed to take the basin, nor is any attempt shown to acquire the land for the State by any proceeding- contemplated by the statute. There was no time when Dickson, or his successors in title, could have had the benefit of the provisions as to appraisal, for, as already found, neither had notice of the intention on the part of the State to acquire the property under the stabute.
As conclusion, we are of opinion that the record shows no actual appropriation of these lands by the State, and no such exclusive occupancy of them by the State as to raise a presumption of appropriation, and hence that no title vested in the State. To avoid possible misunderstanding we add that the lands here referred to are the lands only which were the property of Dickson, and could not, in any possible view, include any part of the lands constituting the berme bank of the canal. Over such lands the State has exclusive control and title.
Judgment of the circuit court reversed and that of the common pleas affirmed.

Reversed.